## IN THE COURT OF APPEALS OF IOWA

No. 24-0781
Filed August 7, 2024

**IN THE INTEREST OF J.R.-S.,**
**Minor Child,**

**J.R., Father,**
        Appellant,

**I.S., Mother,**
        Appellant.
_____

Appeal from the Iowa District Court for Polk County, Rachael E. Seymour, Judge.

Parents separately appeal the termination of their parental rights.
**AFFIRMED ON BOTH APPEALS.**

Jesse A. Macro, Jr. of Macro Law, LLP, Des Moines, for appellant father.

Cole J. Mayer, Des Moines Juvenile Public Defender, Des Moines, for appellant mother.

Brenna Bird, Attorney General, and Natalie Hedberg, Assistant Attorney General, for appellee State.

Colin McCormack of Van Cleaf & McCormack Law Firm, Des Moines, attorney and guardian ad litem for minor child.

Considered by Greer, P.J., and Ahlers and Badding, JJ.

**BADDING, Judge.**

When this child was one year old, he was severely burned while the mother's boyfriend was caring for him. That incident eventually led to the child's removal from the parents' care and adjudication as a child in need of assistance. After the parents failed to meaningfully participate in reunification services, the juvenile court terminated their rights under Iowa Code section 232.116(1)(d), (h), and (i) (2024). Both parents separately appeal.

The father's appeal is limited to his request for more time to work toward reunification. The mother makes that same request in her appeal, plus she challenges the sufficiency of the evidence supporting the grounds for termination, argues termination is contrary to the child's best interests, and asks that we apply the permissive exception to termination in section 232.116(3)(c). We find that additional time is unwarranted and affirm the termination of both parents' rights.

## I.      Background Facts and Proceedings

In February 2023, the Iowa Department of Health and Human Services received allegations that the child was physically abused by the mother's boyfriend. The child's injuries included bruises and severe burns about his body, which required his admission to the burn unit at the University of Iowa Hospitals and Clinics. While there, the child tested positive for cocaine and THC.[1] The mother also tested positive for THC, though she had initially denied use.

The department offered services to the parents in the months that followed, implementing a safety plan after the mother continued her relationship with her

---

[1] The child had also tested positive for THC at birth in September 2021.

boyfriend and refused to acknowledge his abuse of the child. In May, the State obtained an order for temporary removal and filed a child-in-need-of-assistance petition based on the mother's refusal to believe the child's injuries were non-accidental, her boyfriend's violation of the safety plan, and the presence and use of illegal substances in the father's home. The child was adjudicated in need of assistance in June.

By the dispositional hearing in July, the mother reported that she ended her relationship with her boyfriend. But neither parent had participated in recommended services outside of visitation and SafeCare.[2] After the dispositional hearing, the mother completed a substance-use evaluation and then a mental-health evaluation in early August. The substance-use evaluation did not recommend any treatment, but the mental-health evaluation recommended therapy to address past trauma. The mother did not follow through with that recommendation, and the father failed to complete either evaluation. The department then discovered that the father had been convicted of domestic abuse assault by impeding breathing or circulation of the mother in 2020, and there was a no-contact order between them. Despite that order, the department believed the parents had resumed their relationship and were living together again. The department offered to provide the mother with a parent partner and a domestic violence advocate, but she declined.

While the parents completed the SafeCare curriculum by October and were regularly participating in visits, they had still not meaningfully engaged in other

---

[2] The department's caseworker described SafeCare as a parenting class that covers parent-child interactions, healthcare, and home safety.

recommended services. As a result, the department recommended filing a termination petition. Following a permanency hearing in November, the juvenile court determined "reasonable progress is not being made by the parents in achieving the permanency goal of reunification and complying with the other provisions of th[e] permanency plan." The court accordingly directed the State to initiate a termination proceeding.

The State filed its termination petition in January 2024, and a hearing was held in February. In the months leading up to that hearing, the parents' visitation with the child was inconsistent and remained fully supervised. At the hearing, the department caseworker testified that she was concerned about the mother's use of marijuana, her inability to identify unsafe persons to allow around herself and the child, and her susceptibility to domestic violence. Because the father had not participated in services, the caseworker stated she could not verify whether he had addressed his issues with substance use and domestic violence. Although the mother had once told the caseworker that she was struggling to decrease her use of marijuana, the mother testified at the termination hearing that she did not have a problem with the substance. She also denied that the child testing positive for THC and cocaine could have been attributable to her. The mother did, however, acknowledge for the first time that her boyfriend had physically abused the child. For the father's part, he agreed that the only services he participated in were SafeCare and supervised visits. Yet he requested more time to show he was "actually willing to be part of this and everything." Meanwhile, the child was in the same relative placement since removal, where he was thriving.

In its ruling, the juvenile court determined that, despite the offer of services, the child could not be returned to either parent's custody. The court also found that termination was in the child's best interests and none of the permissive exceptions to termination applied. The court did not address the parents' requests for additional time to work toward reunification. Both parents appeal.

## II.    Analysis.

We review terminations of parental rights de novo, asking whether (1) a statutory ground for termination is satisfied, (2) the child's best interests are served by termination, and (3) a statutory exception applies and should be exercised to preclude termination.[3] *See In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022); *see also* Iowa Code § 232.116(1)–(3). If those steps support termination, we consider any other issues the parents raise, such as whether additional time should be granted. *See* Iowa Code § 232.104(2)(b).

Beginning with the first step, the mother challenges the sufficiency of evidence supporting each of the grounds for termination. We choose to focus on termination of the mother's rights under section 232.116(1)(h). *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) ("[W]e may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence."). On that ground, the mother only challenges the State's proof of the final element— that the child could not be safely returned to parental custody at the time of the termination hearing. *See* Iowa Code § 232.116(1)(h)(4) (requiring clear and convincing evidence that child cannot be returned to parental custody "at the

---

[3] Because the father does not raise these three issues in his appeal, we need not address them as to him. *See In re P.L.,* 778 N.W.2d 33, 40 (Iowa 2010).

present time"); *D.W.*, 791 N.W.2d at 707 (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing").

The mother argues the child could have been returned to her custody because she tested negative for drugs, acknowledged her former boyfriend's physical abuse of the child, had employment and housing, and participated in SafeCare and visitation. But the main concern here was the mother's lack of protective capacities, her resulting susceptibility to domestic violence, and—by extension—the child's exposure to physical abuse. The mother was directed to engage in mental-health therapy to alleviate these concerns, but she attended only two sessions late in the case between the permanency and termination hearings. Because the mother did not meaningfully participate in recommended services, she never progressed beyond fully supervised visits. As a result, the child could not have been safely returned to her custody at the time of the hearing. *See, e.g.*, *In re C.N.*, No. 19-1861, 2020 WL 567283, at *1 (Iowa Ct. App. Feb. 5, 2020) ("[T]he mother failed to progress toward reunification over the life of this case. She never progressed to unsupervised visits or trial home visits. Without this necessary progression, we cannot say the children could have returned to the mother's care.").

Turning to the second step, when considering whether termination is in a child's best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). The mother argues "she is currently in a position to best provide for" the child's needs. Having already concluded the child cannot presently

be returned to her custody, we disagree. The child has been in the same relative placement since removal while the mother has wasted nearly every opportunity she was provided to participate in services. The child is integrated into this placement, which intends to adopt. *See id.* § 232.116(2)(b). We agree with the juvenile court that termination is in the child's best interests.

On the third step, the mother argues "[t]he record shows the closeness of the parent child bond and that termination would be more detrimental to the child[] than maintain[ing] the relationship." This argument implicates the permissive exception to termination in section 232.116(3)(c), which allows the court to not terminate when it "would be detrimental to the child . . . due to the closeness of the parent-child relationship." Though there was a bond between the child and mother, that alone is not enough to avoid termination. *See In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021) ("[T]he existence of a bond is not enough."). As the juvenile court found, the mother presented no evidence that the child would suffer physically, mentally, or emotionally upon termination. *See In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) ("[T]he parent resisting termination bears the burden to establish an exception."). We agree with the court that this exception does not apply.

Finally, both parents request more time to work toward reunification.[4] An extension of time is appropriate only if we can conclude "the need

---

[4] We note the juvenile court never ruled on the parents' request for additional time, and neither parent filed a post-ruling motion requesting a ruling on the issue. Error is therefore not preserved on this issue. *See, e.g.*, *In re I.N.*, No. 22-0151, 2022 WL 952782, at *3 (Iowa Ct. App. Mar. 30, 2022) (finding error not preserved on request for additional time where juvenile "court did not address any such request in its decision"); *In re A.M.*, No. 20-1685, 2021 WL 815892, at *4 (Iowa Ct. App. Mar. 3, 2021) ("Rather than raise the complaint for the first time on appeal, the proper procedure to preserve error was to file a motion raising the court's alleged

for removal . . . will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). Beginning with the mother, she claims that the juvenile court "expected perfection from her," pointing to the few services she participated in and her eleventh-hour acknowledgment that her boyfriend caused her child's injuries. But the mother does not identify any "specific factors, conditions, or expected behavioral changes" she intends to make that will "comprise the basis for the determination that the need for removal . . . will no longer exist at the end of" an extension of time. *See id.* When asked at the termination hearing what she would do differently if she was given more time, the mother only said she "would go to therapy more often," "[d]o things more in a promptly manner," and "be more active [with] the advocates that [the department was] trying to provide." But the mother didn't do any of those things even after the permanency goal was changed to termination. So we have no basis to conclude the circumstances would be any different if the mother was granted additional time.

As for the father, he claims "there is a reasonable likelihood the child would be returned to him in six months as the reasons for adjudication would no longer exist," pointing out that he participated in visitations and SafeCare. But that was the extent of his involvement. The termination hearing was the first and only hearing the father attended in this case. Even before these proceedings, the father only saw the child on weekends at the paternal grandmother's home, where the child often stayed. Given the father's lack of participation—before and during the proceedings—six more months would not change the need for removal of the child

---

oversight prior to appealing."). We nevertheless choose to bypass the deficiency and proceed to the merits. *See State v. Taylor*, 596 N.W.2d 55, 56 (Iowa 1999).

from the father's custody.  *See, e.g.*, *In re K.W.-A.*, No. 21-0051, 2021 WL 815882, at *3 (Iowa Ct. App. Mar. 3, 2021) (affirming denial of extension given parent's lack of participation in services); *In re A.C.*, No. 20-1214, 2020 WL 6482092, at *3 (Iowa Ct. App. Nov. 4, 2020) (same); *In re E.C.*, No. 20-0951, 2020 WL 5652372, at *2 (Iowa Ct. App. Sept. 23, 2020) (same); *In re T.B.*, No. 20-0204, 2020 WL 4814160, at *4 (Iowa Ct. App. Aug. 19, 2020) (same).

Finding no cause for reversal, we affirm the termination of both parents' rights.

**AFFIRMED ON BOTH APPEALS.**